UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

SHERRI WARE,                    )
                                )       CASE NO.  1:22-cv-1169
              Plaintiff,        )
                                )
     v.                         )       JUDGE BRIDGET MEEHAN BRENNAN
                                )
NORTH SHORE                     )
PLACEMENT SERVICES, INC.,       )       **MEMORANDUM OPINION**
                                )       **AND ORDER**
              Defendant.        )


Sherri Ware ("Plaintiff" or "Ware") filed suit in this Court against North Shore

Placement Services, Inc. ("Defendant" or "North Shore").  (Doc. No. 1.)  Count I arose under a

federal statute titled the Families First Coronavirus Response Act, Pub. L. 116-127, 134 Stat. 178

(March 18, 2020) ("FFCRA").  (Doc. No. 1 at ¶¶ 67-84.)  Count II asserted wrongful termination

under Ohio law and public policy.  (*Id.* at ¶¶ 85-99.)

North Shore answered the complaint (Doc. No. 11) and also filed a Rule 12(b)(6) motion

to dismiss (Doc. No. 7).  Ware opposed the motion and requested a few forms of procedural

relief that are discussed herein.  (Doc. No. 8.)  North Shore replied and addressed Ware's

procedural points.  (Doc. No. 9.)

## I.  Facts Alleged in the Complaint

From February 2016 until she was terminated on July 23, 2020, Ware was employed by

North Shore.  (Doc. No. 1 at ¶¶ 8-10, 31 & 63.)  North Shore had fewer than 500 employees.

(*Id.* at ¶¶ 73-76.)  Ware was a Direct Care Worker, who "loved to help people and took great

satisfaction in being able to help those with developmental disabilities lead a full life."  (*Id.* at ¶¶

9 & 11 (capitalization in original).)  She did so by working in homes for the disabled operated by

North Shore.  (*See id.* at ¶¶ 19, 22, 36, 38.)

But Ware began to have problems at work during the pandemic.  (*Id.* at ¶ 12.)  She was exposed to Covid-19 on multiple occasions in North Shore homes, yet North Shore would refuse to allow her to quarantine.  (*Id.* at ¶¶ 13-30 & 91.)  Ware requested to go on leave on several occasions.  (*Id.* at ¶¶ 70-72 & 78.)  In the last month of her tenure, she experienced mental distress, emotional distress, and "[a]s a result of her Covid-19 exposures, Ware was disabled." (*Id.* at ¶¶ 22-24 & 40-43.)  Matters came to a head when Ware obtained a doctor's note excusing her from work, which North Shore refused to honor.  (*Id.* at ¶¶ 16-34.)  North Shore directed Ware to return to work.  (*Id.*)  She did not. (*Id.*)  North Shore then terminated her employment. (*Id.*)

## II.  <u>Law and Analysis</u>

### A.  **Standard of Review**

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  "To survive a motion to dismiss, the pleading must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'"  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

"When determining whether [plaintiff's] complaint meets this standard 'we accept as true its factual allegations and draw all reasonable inferences in his favor, but we disregard any legal conclusions.'" *Ryan v. Blackwell*, 979 F.3d 519, 524 (6th Cir. 2020) (quoting *Rudd v. City of Norton Shores*, 977 F.3d 503, 511 (6th Cir. 2020)).  The Court "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).  "The plausibility of an inference depends on a host of considerations, including common sense . . . .'" *Ryan*, 979 F.3d at 524 (quoting *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013)).  "Nor is the Court required to accept as true complaint allegations that are contradicted by public records and other evidentiary materials of which the Court may take judicial notice." *Lawson v. Lynch*, No. 4:15-CV-2140, 2017 WL 979115, at *3 (N.D. Ohio Mar. 14, 2017).

If a plaintiff pleads facts that prove a flaw in the claim or substantiate a defense, she may plead herself out of federal court.  *See Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010); *Cheatom v. Quicken Loans*, 587 F. App'x 276, 279 (6th Cir. 2014); *Gorman v. Chicago*, 777 F.3d 885, 889 (7th Cir. 2015) ("A complainant can plead himself out of court by including factual allegations that establish that the plaintiff is not entitled to relief as a matter of law.").

### B.  The Parties' Contentions

North Shore argued that Ware was a "health care provider" and she therefore could be excepted from the Covid privileges afforded by the FFCRA:

> Ware pled she was a "Direct Care Worker" ("DCW") for people "with developmental disabilities". Complaint, ¶¶ 9, 11. Ware provided services to developmentally-disabled clients in a group home where the clients resided. *Id.*, ¶¶ 9, 11, 19, 22.

>   As a DCW for developmentally-disabled residents, Ware was required to work despite potential COVID in the workplace and was beyond the FFCRA's protections.

(Doc. No. 7 at PageID# 30.)  North Shore cited Department of Labor ("DOL") regulations and caselaw construing the FFCRA.  (*Id.*)

Ware made two points in response.  First, she argued that the determination of whether she was "a health care worker under the FFCRA's protection is a question of fact."  (Doc. No. 8 at PageID# 52.)  "[O]nly the trier of fact should decide whether Ware was exempt from the FFCRA due to the healthcare exception."  (*Id.* at 53.)

She then suggested "the healthcare worker exception was not in effect at the time of [her] termination . . .  on July 23, 2020.  On September 16, 2020, the Department of Labor revised the definition of health care provider.  Therefore, North Shore could not and cannot retroactively use the exception at the time they chose to terminate Ware."  (*Id.*)

On reply, North Shore re-parsed the DOL regulations and the definition of 'health care provider.'  (Doc. No. 9 at PageID# 57.)  As to Ware's second argument, North Shore responded that the federal court decision vacating part of the DOL regulation did not issue until "August 3, 2020 – 11 days after Ware's termination."  (*Id.*)

###   C.  North Shore's Exhibits

North Shore attached two exhibits to its motion to dismiss: a job description (Doc. No. 7-1) and progress notes (Doc. No. 7-2).  North Shore indicated that those were included because Ware's complaint referred to her job duties and concerns she raised about Covid.  (Doc. No. 7 at PageID# 30 n.1 & 35 n.3.)  In response, Ware argued that inclusion of these exhibits was improper.  (*See* Doc. No. 8 at PageID# 44-45.)

"[W]hen a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment."  *Com.*

*Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007) (citation

omitted).  A document is "central to the plaintiff's claims" in the complaint when the causes of

action therein "relate[ ] to and arise[ ] from" the document.  *Greenberg v. Life Ins. Co. of

Virginia*, 177 F.3d 507, 514 (6th Cir. 1999).  To consider such a document, "it must also be clear

that there exist no material disputed issues of fact regarding the relevance of the document."

*Ouwinga v. Benistar 419 Plan Servs.*, 694 F.3d 783, 797 (6th Cir. 2012).

 The complaint did not refer to the documents attached to North Shore's brief.  There was

also no indication that these documents were central to Ware's claims.  The documents are

properly excluded on such grounds.  Further, the documents are neither self-authenticating nor

supported by an affidavit that would explain when they were created, how, by whom, or even for

what purpose.  *See, e.g.*, *Johnson v. City of Saginaw*, No. 17-CV-13174, 2017 WL 6512451, at

*4 (E.D. Mich. Dec. 20, 2017) (declining to consider exhibit attached to motion to dismiss where

authenticity was in question).  The Court disregards Documents 7-1 and 7-2.

 On reply, North Shore attached a document from Ohio state agencies with guidance

regarding Covid-19.  (Doc. No. 9-1.)  It is true that this Court may take judicial notice of public

records, but that authority is not limitless.

> In general, the majority of the cases which do not allow a court to take judicial
> notice of the contents of a public record do so because there is no way for an
> opposing party, prior to the issuance of the court's decision, to register his or her
> disagreement with the facts in the document of which the court was taking notice.
> Thus, in order to preserve a party's right to a fair hearing, a court, on a motion to
> dismiss, must only take judicial notice of facts which are not subject to reasonable
> dispute.

*Passa v. City of Columbus*, 123 F. App'x 694, 697-98 (6th Cir. 2005) (internal citation omitted)

(a district court's reliance on a website publication from a government agency was error on a

motion to dismiss).

 By attaching the document to its reply (rather than the motion), North Shore deprived

Ware of the opportunity to address it. Further, North Shore did not seek leave to file new items on reply. The Court therefore disregards Document No. 9-1.

### D. Facts on a Motion to Dismiss

Claims under the FFCRA may be dismissed under Rule 12(b)(6) where warranted. *E.g.*, *Valdivia v. Paducah Ctr. for Health & Rehab., LLC*, 507 F. Supp. 3d 805, 811 (W.D. Ky. 2020). And it is established that "statutory interpretation is a question of law." *In re Palmer*, 219 F.3d 580, 583 (6th Cir. 2000). But here, Plaintiff urged that "whether [she] is viewed as a health care worker under the FFCRA's protection is a question of fact that should not be decided at this stage of the litigation." (Doc. No. 8 at PageID# 52.)

It is more accurate to say that the Court does not *resolve fact disputes* at the motion to dismiss stage. Instead, it presumes the truth of facts a plaintiff alleged. Still, the Court may and must address some fact-related questions. To begin, the Court asks what reasonable factual inferences may be drawn in a plaintiff's favor based on what was alleged in the complaint. The Court then asks whether the facts and inferences together suffice to recite a plausible legal theory.

### E. Ware's Description of Her Work

Ware pled that she was a "Direct Care Worker," who "loved to help people and took great satisfaction in being able to help those with developmental disabilities lead a full life." (Doc. No. 1 at ¶¶ 9 & 11 (capitalization in original).) She did so by working in homes for the disabled operated by North Shore. (*See id.* at ¶¶ 19, 22, 36, 38.)

In her brief, she challenged North Shore's argument regarding "non-symptomatic health care workers which wasn't the case here." (Doc. No. 8 at PageID# 48.) Ware countered that she had a doctor's note and was exposed to Covid. (*Id.*) Notably, Ware did not dispute that she was

a health care worker.  Instead, she disagreed with being characterized as non-symptomatic.

Ware argued and admitted that workers at North Shore were, indeed, healthcare workers.
When discussing laws regarding Covid, Ware wrote:

> This requirement applies to North Shore as well.  They cannot escape this
> requirement simply because they are "healthcare workers."

(*Id.* at PageID# 49.)  Ware likened her final weeks at North Shore to a case where employees in a

dental practice complained of unhealthy practices.  (*Id.* at PageID# 49 & 51.)

Finally, and most importantly, Ware argued and admitted to having had "patients in her

care."  (*Id.* at PageID# 49.)  Requiring Ware to come to work after a Covid exposure was, she

says, "a clear and obvious safety and health hazard to . . . her patients . . . ."  (*Id.* at PageID# 51.)

Ware thus acknowledged that she was a health care worker for disabled patients.  Those

were admissions because Ware's description of the nature of her work at North Shore was clear,

deliberate, and unambiguous.  *See generally United States v. Burns*, 109 F. App'x 52, 58 (6th

Cir. 2004) (citation omitted).  So whatever label is affixed to the question of what was Ware's

job (whether fact, law, or mixed), the answer comes from what she pled, argued, and thereby

admitted.  *See Kay v. Minacs Grp. (USA), Inc*., 580 F. App'x 327, 331 (6th Cir. 2014) ("Factual

assertions in pleadings . . . unless amended, are considered judicial admissions conclusively

binding on the party who made them.") (quotations and citations omitted).  Based on her

allegations, arguments, and admissions, it is clear that Ware provided health care to disabled

patients housed at North Shore.

While the nature of Ware's work is straightforward, it prompts a few questions of law

(substantive and procedural), addressed in the remainder of this opinion.  On the merits, the issue

is whether the nature of Ware's work at North Shore rendered her a 'health care provider' under

the FFCRA.  Ware raised procedural objections, suggesting that it is too soon to take up that

issue, which she considers a question of fact for the jury.  Additional procedural issues follow

from Ware's opposition brief, which waives arguments but also mentions the possibility of

amending the complaint.  These are all addressed below.

### F.  The FFCRA

"COVID-19 [is] a novel severe acute respiratory illness . . . ."  *South Bay United*

*Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020) (Mem.) (Roberts, C.J., concurring in

denial of application for injunctive relief).  "On March 18, 2020, in response to the COVID-19

pandemic, Congress passed the FFCRA. . . .  The FFCRA took effect April 1, 2020."  *Highers v.*

*BriteLife Recovery at Hilton Head, LLC*, No. 9:21-CV-03860, 2022 WL 3280098, at *2 (D.S.C.

June 7, 2022), *adopted in pertinent part,* 2022 WL 4103161 (D.S.C. Sept. 8, 2022).  "Broadly

speaking . . . the FFRCA obligates employers to offer sick leave and emergency family leave to

employees who are unable to work because of the pandemic."  *New York v. U.S. Dep't of Labor*,

477 F. Supp. 3d 1, 5 (S.D.N.Y. 2020).[1]

> Division E of the FFCRA is the Emergency Paid Sick Leave Act ("EPSLA").
> Under the EPSLA, [a]n employer shall provide to each employee employed by
> the employer paid sick time to the extent that the employee is unable to work (or
> telework) due to a need for leave because: . . . [t]he employee has been advised by
> a health care provider to self-quarantine due to concerns related to COVID-19.
>
> Section 5104 of the FFCRA makes it unlawful for an employer to discharge,
> discipline, or in any other manner discriminate against any employee who . . .
> takes leave in accordance with this Act . . . .

*Colombe v. SGN, Inc.*, No. 5:20-CV-374, 2021 WL 1198304, at *3 (E.D. Ky. Mar. 29, 2021)

(quotations and citations omitted).  "The EFMLEA, which amends . . . the Family and Medical

Leave Act, 29 U.S.C. 2601 et seq. ("FMLA"), permits certain employees to take up to twelve

---

[1] Some aspects of the FFCRA contained sunset clauses and have since expired.  Because the
events at issue in this case occurred in 2020, the same year the FFCRA was adopted, none of
those expiration dates are relevant.

weeks of expanded family and medical leave for specified reasons related to COVID-19."

*Martinez v. Aspen Dental Mgmt., Inc*., No. 2:20-CV-545, 2022 WL 523559, at *4 n.5 (M.D. Fla. Feb. 22, 2022).

### 1.    Statutory Text

"The preeminent canon of statutory interpretation requires us to presume that [the] legislature says in a statute what it means and means in a statute what it says there.  Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous."

*BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (quotations and citations omitted).

The FFCRA provided in pertinent part:

SPECIAL RULE FOR HEALTH CARE PROVIDERS AND EMERGENCY RESPONDERS.

An employer of an employee who is a health care provider or an emergency responder may elect to exclude such employee from the application of the provisions in the amendments made under of section 3102 of this Act.

Pub. L. No. 116-127, § 3105, 134 Stat. 192 (2020) (cited as "FFCRA").  "The Secretary of Labor shall have the authority to issue regulations for good cause . . . to exclude certain health care providers and emergency responders from the definition of eligible employee . . . ."  FFCRA § 110(a)(3)(A).  "Except that an employer of an employee who is a health care provider or an emergency responder may elect to exclude such employee from the application of this subsection."  FFCRA § 5102.  "The Secretary of Labor shall have the authority to issue regulations for good cause . . . to exclude certain health care providers and emergency responders from the definition of employee . . . including by allowing the employer of such health care providers and emergency responders to opt out."  FFCRA § 5111(1).

As noted by other courts, "both the EPSLA and EFMLEA provide that 'an employer of an employee who is a health care provider . . . may elect to exclude such employee from the

application' of their respective provisions." *Zarling v. Vill. of Winneconne*, No. 21-C-1013, 2022 WL 3553476, at *1 (E.D. Wis. Aug. 18, 2022) (quoting FFCRA §§ 3105, 5102(a)). Congress thus plainly afforded employers the discretion to decline FFCRA protections for those employees who provide health care.

### 2. Statutory Definition

According to Section 5110 of the FFCRA:

> The terms "health care provider" and "son or daughter" have the meanings given such terms in section 101 of the Family and Medical Leave Act of 1993 (29 U.S.C. 2611).

FFCRA § 5110(4).  Section 5110(4) thus looked to the FMLA's definition of a health care provider.  The FMLA, in turn, provided:

> The term "health care provider" means –
>
> (A)  a doctor of medicine or osteopathy who is authorized to practice medicine or surgery (as appropriate) by the State in which the doctor practices; or
>
> (B)  any other person determined by the Secretary to be capable of providing health care services.

29 U.S.C. § 2611(6).[2]

### 3. Analysis

On its face, the plain language of subsection (B) supports the conclusion that Ware comes within the definition of health care provider.

---

[2] The rather narrow definition, at least in subpart (A), makes sense when one considers the function a "health care provider" plays in the operation of the FMLA:  A "serious health condition" that would trigger certain rights under the FMLA requires that an employee's diagnosis or treatment come from a "health care provider."  *See* 29 U.S.C. § 2611(11). "Under the FMLA, '[a]n employer may require that . . . the employee's own serious health condition . . . be supported by a certification issued by the health care provider . . . .'" *Culpepper v. BlueCross BlueShield of Tennessee, Inc.,* 321 F. App'x 491, 493 n.2 (6th Cir. 2009) (quoting 29 C.F.R. § 825.305(a).); *see also Milman v. Fieger & Fieger, P.C.*, No. 21-2685, 2023 WL 387293, at *3 (6th Cir. Jan. 25, 2023).

Ware was a person capable of providing health care services – and actually did provide health care services. She alleged as much. (*See* Doc. No. 1 at ¶¶ 9-11.) Ware also argued as much in her brief. (Doc. No. 8 at PageID# 48, 49, & 51.) Ware admitted to being a "health care worker" who worked directly with developmentally disabled "patients." (*See id.*)

Ware's pleadings, arguments, and admissions support the legal conclusion that Ware was a person capable of providing health care services. Moreover, Ware acknowledged that she provided health services to disabled patients in her direct care. In sum, Ware acknowledged in her submissions to this Court that she was "capable of providing health care services" to North Shore patients. Ware thus pled and argued herself within the FFCRA's statutory definition of a health care provider.

### G. Regulatory and Judicial Definitions of a FFCRA "Health Care Provider"

In the short span of six months from Spring 2020 to Fall 2020, the FFCRA was passed and signed into law; another major Covid-driven law was adopted shortly thereafter, which amended some sections of the FFCRA; the DOL adopted implementing regulations for the FFCRA; certain of those regulations were invalidated by a federal court; and the DOL issued several new definitions. *See generally New York*, 477 F. Supp. 3d at 4-6; *Redmon v. Advanced Elec. Sys., Inc*., No. 3:21-CV-90, 2021 WL 4477073, at *2 (W.D. Ky. Sept. 29, 2021); *Rivera v. REP Corp. NA*, No. 3:21-CV-273, 2022 WL 4783165, at *4 (E.D. Tenn. Sept. 30, 2022).

Ware pointed to changes of regulatory definition for a "health care provider" – which were prompted by the *New York* decision cited above – from which she contends that the exception did not exist when she was fired or does not apply to her. Ware's own description of her work, however, supports that she comes within each different agency and judicial interpretation of a "health care provider."

### 1.  The DOL's April 2020 Regulatory Definition

Just weeks after passage of the FFCRA, the DOL adopted implementing regulations

defining a "health care provider" for the purposes of the FFCRA leave provisions as:

> anyone employed at any doctor's office, hospital, health care center, clinic, . . .
> nursing facility, retirement facility, nursing home, home health care provider . . .
> or any similar institution, Employer, or entity.  This includes any permanent or
> temporary institution, facility, location, or site where medical services are
> provided that are similar to such institutions, as well as any individual employed
> by an entity that contracts with any of these institutions described above to
> provide services or to maintain the operation of the facility where that individual's
> services support the operation of the facility . . . .

*New York,* 477 F. Supp. 3d at 14 (quoting 85 Fed. Reg. 19,326 (Apr. 6, 2020)).

### 2.  Invalidation of the April 2020 Regulatory Definition

In *New York*, the court held that the DOL's definition of "health care provider" had

aspects of overbreadth that were unmoored from the FFCRA itself.

> The definition, needless to say, is expansive: DOL concedes that an English
> professor, librarian, or cafeteria manager at a university with a medical school
> would all be "health care providers" under the Rule.

> Returning to *Chevron*'s first step, the Court concludes that the statute
> unambiguously forecloses the Final Rule's definition.  The broad grant of
> authority to the Secretary is not limitless.  The statute requires that the Secretary
> determine that the *employee* be capable of furnishing healthcare services.  It is the
> "person" – *i.e.*, the employee – that the Secretary must designate.  29 U.S.C. §
> 2611(6).  And the Secretary's determination must be that the person is *capable of
> providing healthcare services*; not that their work is remotely related to someone
> else's provision of healthcare services.

*New York,* 477 F. Supp. 3d at 14 (emphasis in original).  The court vacated the regulatory

definition that had been promulgated in April 2020.  *See id.*

### 3.  The DOL's September 2020 Revised Regulatory Definition

In response to the *New York* decision, on September 16, 2020, the DOL issued a revised

rule.  The definition of health care provider was revised to include:

> Any other Employee who is capable of providing health care services, meaning he or she is employed to provide diagnostic services, preventive services, treatment services, or other services that are integrated with and necessary to the provision of patient care and, if not provided, would adversely impact patient care.

85 F.R. 57677-01 (Sept. 16, 2020) (to be codified at 29 C.F.R. § 826.30(c)(1)(i)(B)). The

September 2020 regulation explained:

> . . . Employees who work at, for example, a . . . health care center . . . nursing facility, retirement facility, nursing home, home health care provider, . . . or any similar permanent or temporary institution, facility, location, or site where medical services are provided. This list is illustrative. An Employee does not need to work at one of these facilities to be a health care provider, and working at one of these facilities does not necessarily mean an Employee is a health care provider.

*Id.* (to be codified at 29 C.F.R. § 826.30(c)(1)(iv)).

Next the Court will consider how those DOL and judicial constructions of a FFCRA

health care provider apply in this case.

### 4. The Parties' Arguments

Ware argued that "the healthcare worker exception was not in effect at the time of Ware's

termination." (Doc. No. 8 at PageID# 53.) She pointed out that the DOL revised its definition in

September 2020, whereas Ware was fired on July 23, 2020. (*Id.*) Ware argued that the

September 2020 regulation could not be applied retroactively as to her. (*Id.*)

North Shore replied that the April 2020 regulatory definition was still in effect on July

23, 2020. And it was not until August 3, 2020 that the court in *New York* invalidated the

regulatory definition. That court ruling came after Ware's termination. (Doc. No. 9 at PageID#

57.)

North Shore cited the decision in *Payne v. Woods Servs., Inc.*, 520 F. Supp. 3d 670, 676-

77 (E.D. Pa. 2021) for the general proposition that the FFCRA has an exception for health care

providers. (*See* Doc. No. 7 at PageID# 30-31.) Ware rejoined that in *Payne* the court "analyzed

when the health care provider rule/exception came into effect and found that it was not in effect at the time of the plaintiff's termination."  (*See* Doc. No. 8 at PageID# 53.)

### 5.    Analysis

Ware's only argument is that the exception did not exist (or was in limbo) until the DOL issued a new regulatory definition in September 2020.  That argument is mistaken.

Even though the April 2020 regulation was invalidated – or even if the DOL had not adopted any regulation at all by July 23, 2020 – that does not mean (as Ware argued) that the health care provider exception "was not in effect."  (*Id.*)  As detailed earlier in this opinion, the statutory text of the FFCRA itself treated health care providers distinctly.  The FFCRA repeatedly indicated Congressional understanding and intent that heath care providers could be (i) treated different from all other workers and (ii) thereby excluded from FFCRA protections.

### a)    A Self-Executing Statutory Exception

The FFCRA did not delay an employer's right to deny the new Covid-19 work privileges to employees who provide health care.  *See* FFCRA § 3105.  The FFCRA did not make an employer's discretion in that regard dependent or contingent on the DOL choosing to issue a regulation.  *Cf.* FFCRA §§ 3102(b) and 5111(1) (allowing but not requiring regulations regarding health care provider).  Had the DOL never done so at all, still it would have been true that "health care providers" could be exempted from FFCRA special privileges by their employers pursuant to FFCRA § 3105.

For that reason, the Court rejects Ware's suggestion that the exception for health care providers was nonexistent or in limbo prior to the new DOL regulation from September 2020. Congress fashioned the FFCRA so that employers in the healthcare industry need not await agency regulators in order to exclude health care workers from the new FFCRA privileges.

### b)    The Weight of Caselaw

Multiple courts have considered the consequences of the *New York* court's vacatur of the DOL definition, which was then revised in September 2020.  Those decisions hold that the health care provider exception did continue to exist and apply – with those courts differing at most on which definition(s) applied to events prior to September 2020.  *See Martinez*., 2022 WL 523559 at *11 (collecting authorities); *Highers,* 2022 WL 3280098, at *4 (collecting authorities), *adopted in pertinent part,* 2022 WL 4103161.

### c)    Differences in Regulatory Definition Are Immaterial

The parties disagree about the effect of changing regulatory definitions in 2020 misplaced.  But Ware provided healthcare services and patient care, so she is not in the class of employees affected by those regulatory definition changes.  By her own description, Ware came within the regulatory definition for "health care provider" issued by the DOL in April 2020 as well as the revised definition in September 2020.  In both, the DOL expressly referred to group homes where medical services were provided to the residents/patients, such as nursing homes and similar facilities.

In the interim, the *New York* decision put forth its judicial construction of "health care provider" under the FFCRA.  Ware unquestionably comes within that court's interpretation of the term, too.  The concern in *New York* that led to vacatur of the April 2020 DOL definition was that the latter allowed a health care provider employer to deny FFCRA privileges to all its employees regardless of whether they themselves provided care.  For example, the April 2020 suggested that a hospital might deny FFCRA privileges to its accountants or billing technicians who themselves had nothing to do with patient care.  It was that sort of overbreadth in the April 2020 definition which *New York* held to be an impermissible departure from the text and purpose of the FFCRA.  477 F. Supp. 3d at 14.  Here, Ware's job raises no such concern because

admittedly she did provide care directly to the patients/residents at North Shore.

Both parties here relied on the same case, which happened to reject both of their arguments made here. Ware argued that vacatur of the April 2020 regulation somehow eliminated the FFCRA's health care provider exception. But the one case she cited says the opposite. *See Payne*, 520 F. Supp. 3d at 677. *Payne* held that in the absence of a regulatory definition, "health care provider" would be defined or construed by reference to the FFCRA statute itself. *See id.* North Shore argued that this Court could simply apply the April 2020 DOL definition. Yet North Shore likewise cited *Payne,* which rejected North Shore's argument. *See id.* ("That the April Rule was in place at the time of Plaintiff's firing is irrelevant when the Rule itself was not lawfully promulgated.").

None of the regulatory or judicial developments in 2020 matter much here for a simple reason. There is no way that Ware's work can be deemed to fall outside the plain meaning of the FFCRA, which contemplated that a health care provider included a person capable of providing health care services. This Court has "determine[d] whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case," relying on "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co*., 519 U.S. 337, 340-41 (1997); *see also United States ex rel. Felten v. William Beaumont Hosp*., 993 F.3d 428, 432 (6th Cir. 2021), *cert. denied sub nom.* 142 S. Ct. 896 (2022).

### d) Direct Care for the Disabled Is a Health Care Service

The Sixth Circuit has described services for developmentally disabled patients as healthcare:

> Defendant provides healthcare and living assistance for developmentally disabled individuals. Plaintiff began work as a staff caregiver for defendant in August

2007.  Her responsibilities included, among other things, assisting developmentally disabled individuals with daily living activities, transporting disabled individuals to field trips and other appointments outside defendant's facility, and performing housekeeping duties.  Plaintiff is not a nurse.

*Epperson v. Res. Healthcare of Am., Inc.*, 566 F. App'x 433, 433-34 (6th Cir. 2014).  The Sixth

Circuit upheld drug testing of workers like Ware because—

> *those employees* [ ] *provide health care* to residents at state hospitals for the mentally ill and developmentally disabled and to residents of veterans' homes. These employees have direct patient care responsibilities in state facilities and have access to medications, including controlled substances.  An employee involved in substance abuse might succumb to the temptation to take wrongful advantage of his or her access to these controlled substances.  As with the health care providers who provide care to prisoners, there is a risk of harm to the patient if a care giving employee is under the influence of drugs or alcohol.

*Int'l Union v. Winters*, 385 F.3d 1003, 1010 (6th Cir. 2004) (emphasis added); *cf. Pennhurst*

*State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 37 (1981) (White, J., dissenting) ("The

Developmentally Disabled Act . . . was passed in light of Congress' continued concern about the

quality of health care being provided to the developmentally disabled and that federal support for

improved care should be increased.").

Other courts have described a job like Ware's as within the provision of health care

services:

> VOCA provides residential and home-based health care services for vulnerable populations, such as the developmentally disabled and the mentally impaired. VOCA offers a wide range of services including: daily living support services; vocational training; and rehab and behavioral health services.  VOCA also operates intermediate care facilities [ ] for individuals that need around-the-clock care, as well as assisted living facilities [ ] for more independent individuals. VOCA employs Registered Nurses [ ] and Licensed Practical Nurses [ ] to care for its patients and to administer prescribed medications and injections. Additionally, VOCA employs Direct Support Professionals [ ] to help residents perform daily tasks.

*Brown v. VOCA Corp.*, No. 2:18-CV-542, 2020 WL 13453597, at *1 (S.D. Ohio Oct. 21, 2020)

(citations and defined terms omitted); *Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't*

*of Health & Rehab. Servs.*, 225 F.3d 1208, 1211 (11th Cir. 2000) ("Plaintiffs include the Florida Association of Rehabilitation Facilities, Inc. and several operators of intermediate care facilities for the developmentally disabled ("ICF/DDs"). Plaintiffs provide essential developmental and health care services to low income persons in numerous ICF/DDs throughout the State of Florida."); *Inrex Home Care, LLC v. Ohio Dep't of Dev. Disabilities*, 2016-Ohio-7986, 76 N.E.3d 681, ¶ 2 (10th Dist.) ("Inrex is a health care provider serving developmentally-disabled clients."); *Swoope v. Osagie*, 2016-Ohio-8046, 76 N.E.3d 686, ¶ 2 (8th Dist.) (describing care for developmentally disabled person as "home health care services").

These authorities persuade the Court that Ware came within the plain meaning of the statutory language for the excerption in the FFCRA. As used in common parlance and as used in the cases cited above, direct care for developmentally disables persons in group homes is the provision of health care.

### H. Matters Decided Under Rule 12(b)(6)

Plaintiff cited *Zarling,* 2022 WL 3553476, at *5 for the proposition that determining whether Ware was a health care provider cannot be resolved until after discovery. (Doc. No. 8 at PageID# 52-53.) In that case the question was "whether Zarling, as police secretary for the Village of Winneconne Police Department, was properly classified as an 'emergency responder' for the purposes of the EPSLA and the EFMLEA." *Id.* at *3. "For her part, Zarling asserts that her duties as police secretary were purely clerical in nature and were not necessary to maintain the operation of the Winneconne Police Department." *Id.* at *4.

*Zarling* is distinguishable. Facts about the plaintiff's job function were disputed and unclear. The *Zarling* plaintiff did not make admissions like those Ware has made here. Also, it seemed counterintuitive to label a secretary inside a police department as a 'responder,' which

made the question of law there far more tenuous than in this case.

Ware also argued that *Payne* denied a motion to dismiss regarding the health care provider exception in the FFCRA. (Doc. No. 8 at PageID# 53.)  However, in *Payne,* the court did *not* kick the proverbial can down the road.  In the context of that motion to dismiss, the court decided as a matter law that the health care provider exception did not apply.  520 F. Supp. 3d at 677.  *Payne* confirms that where the pleadings and admissions make the facts plain or obvious, a court faced with a Rule 12(b)(6) motion can decide whether those come within a statute as a question of law.  *See id.*[3]

Contrary to Ware's characterization, the decisive issue addressed in this opinion is not a question of fact.  We know what Ware did for her work because she told us in pleading and in brief.  North Shore agreed with her.  Those facts are undisputed.  The determinative issue for this Rule 12(b)(6) motion is whether, given the undisputed nature of her job, Ware's work comes within the health care provider exception in the FFCRA.

Determining whether a particular individual or entity is covered by federal statutory definitions does not always necessitate a jury.  *E.g., Weary v. Cochran*, 377 F.3d 522, 524 (6th Cir. 2004) ("[T]he Age Discrimination in Employment Act protects employees, but not independent contractors. The determination of whether a plaintiff qualifies as an employee under the Act 'is a mixed question of law and fact' that a judge normally can make as a matter of law.") (citations omitted); *Rodriguez v. Am. Int'l Ins. Co. of Puerto Rico*, 402 F.3d 45, 47 (1st Cir. 2005) ("The question of law posed by this case is whether a CDT, defined by Puerto Rico

---

[3] This Court's citations to *Payne* above are driven by the parties' briefing and should not be misinterpreted to indicate substantive agreement with the entirety of the *Payne* decision.  Here, the lesson drawn from that case is solely procedural.  This Court does not adopt *Payne*'s substantive treatment of the FFCRA or use of FMLA regulations when interpreting the FFCRA.

law as 'an independent facility . . . which provides community services for the diagnosis and treatment of ambulatory patients under the professional supervision of persons licensed to practice medicine, surgery or dentistry in Puerto Rico,' qualifies as 'a hospital that has a hospital emergency department' under EMTALA, 42 U.S.C. § 1395dd(a).") (citation omitted); *Debakker v. Hanger Prosthetics & Orthotics E., Inc*., No. 3:08-CV-11, 2010 WL 11520024, at *3 (E.D. Tenn. Mar. 19, 2010) ("whether Mr. Turner, an orthotist, is a health care provider under the Act – is a controlling question of law").

By way of example, the Family Medical Leave Act ("FMLA") defines a "health care provider" as either (i) a doctor of medicine or osteopathy "who is authorized to practice medicine or surgery . . . by the State in which the doctor practices" or (ii) "any other person determined by the Secretary to be capable of providing health care services."  29 U.S.C. § 2611(6).  Courts treat as a question of law whether something satisfies a definition in the FMLA.  *See, e.g.*, *Linebarger v. Honda of Am. Mfg., Inc*., 870 F. Supp. 2d 513, 523 (S.D. Ohio 2012) ("Whether an illness qualifies as a serious health condition under the FMLA is a legal question which this Court must determine."); *Sims v. Kroger Co*., No. 1:07-CV-338, 2008 WL 2036909, at *3 (S.D. Ind. May 9, 2008) ("Whether [plaintiff] suffered from a serious health condition is, as offered by [defendant], a question of law.  The Department of Labor ('DOL') offers this definition."); *Bell v. Jewel Food Store*, 83 F. Supp. 2d 951, 958 (N.D. Ill. 2000) (same).

This Court has taken the facts Ware presented and determined what are the legal implications and consequences of those.  That is proper terrain for a motion to dismiss.

## I.  Waiver of Undeveloped Arguments

The lion's share of Ware brief in opposition to the motion to dismiss addressed Ware's state law public policy claim.  The one and only argument Ware made regarding the DOL

regulatory developments in 2020 was that the health care provider exception ceased to operate in the interim.  (*See* Doc. No 8 at PageID# 53.)  As discussed, that argument was mistaken.

Ware said nothing regarding the content of or differences between the DOL definitions from April 2020 and September 2020.  Nor did she address *New York*'s judicial construction of the FFCRA.  (*See id.*)  Ware did cite *Payne*, 520 F. Supp. 3d at 677.  (*See* Doc. No. 8 at PageID# 53.)  But here Ware chose not to make arguments of which *Payne* and its progeny put her on notice.  Ware did not discuss (and thereby waived) possible arguments why she or the work performed at North Shore might fall outside of either § 5110(4) of the FFCRA, § 2611(6)(B) of the FMLA, or regulations implementing the FMLA's reference to a "health care provider."

Ware's election not to develop arguments of this type constitutes a waiver.  Legal positions, arguments, and theories can be waived.  *See, e.g., Bannum Place of Saginaw, LLC v. Nat'l Lab. Rels. Bd.*, 41 F.4th 518, 529 (6th Cir. 2022); *Cranpark, Inc. v. Rogers Grp., Inc*., 821 F.3d 723, 736 (6th Cir. 2016); *Brooks v. Bobb*y, No. 1:02CV1416, 2006 WL 2456494, at *10 (N.D. Ohio Aug. 22, 2006), *aff'd sub nom. Brooks v. Anderson*, 292 F. App'x 431 (6th Cir. 2008).

In sum, Ware identified a potential issue.  "However, she devotes no part of her brief to this argument.  It is well-established that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."  *Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005), *overruled on other grounds by Lewis v. Humboldt Acquisition Corp*., 681 F.3d 312, 317 (6th Cir. 2012).

### J.  Ware's State Law Claims

Although the Court concludes that Ware's work providing direct care in group homes for developmentally disabled persons qualifies as work of a "health care provider" under the

FFCRA, that conclusion has nothing to do with wrongful termination or public policy under Ohio law.  Ohio courts are best suited to ascertain state public policy on questions of public health and employee rights.  This Court declines to exercise supplemental jurisdiction over Count II.  This does not bar Ware from pursuing claims in state court.  *See generally Ward v. Alt. Health Delivery Sys., Inc.*, 261 F.3d 624, 627 (6th Cir. 2001).

### K.  Request to Amend the Complaint

Ware pled in her complaint her intention to file an amended complaint raising additional claims under Ohio law once an Ohio agency issues to her a right-to-sue letter.  (Doc. No 1 at ¶¶ 5-7.)  Ware's brief asks that, in the event the Court does not deny North Shore's motion to dismiss, that the Court grant leave for Ware to amend her complaint.

Rule 15(a) indicates that leave to file an amended complaint should be "freely" granted "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "A 'bare request' for amendment in an opposition to a motion to dismiss does not constitute a motion to amend," however.  *Justice v. Petersen*, No. 21-5848, 2022 WL 2188451, at *3 (6th Cir. June 17, 2022).  Although leave to amend is generally given, "[a] court need not grant leave to amend . . . where amendment would be 'futile.'"  *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 (6th Cir. 2005) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)).  Whether a proposed amendment is "futile" is governed by the standard applicable to a Rule 12(b)(6) motion to dismiss.  *Id.*  A court is within its discretion to refuse amendment and dismiss the complaint if it "concludes that the pleading as amended could not withstand a motion to dismiss."  *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir. 1986); *see also Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 745-46 (6th Cir. 1992).  Because Ware has indicated her desire to add claims and legal theories arising under Ohio law (Doc. No 1 at ¶¶ 5-7), and because this Court has decided not to exercise supplemental

jurisdiction given the issues raised, Ware's amendment adding Ohio law claims or legal theories would be futile.

As for the federal FFCRA claim, Ware's brief indicates generically that Ware would "add detail to her claims." (Doc. No. 8 at PageID# 54.) But were Plaintiff granted leave to amend, she would *not* be free to contradict facts she previously put forward or admitted. "[T]he Sixth Circuit has held that 'pleadings withdrawn or superseded by amended pleadings are admissions against the pleader in the action in which they were filed.'" *PetroJebla, SA de C.V. v. Betron Enters., Inc*., No. 19-11439, 2020 WL 95802, at *4 (E.D. Mich. Jan. 8, 2020) (quoting *Penn. R.R. Co. v. City of Girard*, 210 F.2d 437, 440 (6th Cir. 1954)).

There would be no escaping the fact that Ware worked at North Shore as a health care worker, who provided direct care to developmentally disabled patients. Adding more detail to what Ware has thus far described would not change the fact that the work Ware described was, plainly and clearly, within the provision of health care services. For these reasons, it would be futile for Ware to amend her FFCRA claim.

## III.  <u>Conclusion</u>

For the reasons above, Document Nos. 7-1, 7-2, and 9-1 filed by Defendant are disregarded. Plaintiff's request for leave to amend in lieu of dismissal is DENIED. Count I of Plaintiff's complaint is DISMISSED with prejudice. The Court declines to exercise supplemental jurisdiction as to Count II, which is therefore DISMISSED without prejudice.

**IT IS SO ORDERED.**

_____
BRIDGET MEEHAN BRENNAN
Date:  January 30, 2023                    UNITED STATES DISTRICT JUDGE